UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CHARLES BRADFORD** | : | **CIVIL ACTION NO. 18-1536** |
| **VS.** | : | **JUDGE TERRY A. DOUGHTY** |
| **MOREHOUSE PARISH SCHOOL BOARD, ET AL.** | : | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, are the following motions: 1) motion to dismiss complaint for lack of standing and for failure to state a claim upon which relief can be granted [doc. # 6] filed by defendants, Morehouse Parish School Board ("MPSB"), Chasity Kennedy, Rose Thompson, Karen Diel, Louis Edward Melton, Richard "Rick" Hixon, Leland "Chip" Rawls, II, and David Gray (collectively, "MPSB defendants"); 2) motion to dismiss amended complaint for lack of standing and for failure to state a claim upon which relief can be granted [doc. # 12] also filed by the MPSB defendants, plus Stephen J. Katz; and 3) motion to dismiss the original and amended complaints for failure to state a claim upon which relief can be granted [doc. # 10], filed by defendants, Louisiana Board of Elementary and Secondary Education ("BESE"), Gary Jones, the Louisiana Department of Education ("LDE"), and John White (collectively, "State defendants"). The motions are opposed. For reasons assigned below, it is recommended that the motions be GRANTED, and that plaintiff's complaint, as amended, be dismissed, without prejudice.

**Background**

On November 26, 2018, Charles Bradford, a citizen and taxpayer of the city of Bastrop, Louisiana, filed the instant pro se "Complaint and Emergency Temporary Restraining Orders and Preliminary Injunction LR 65.1" against the MPSB, its individual board members, the MPSB superintendent, BESE, LDE, and other state officials. (Compl.). Plaintiff invoked the court's federal question jurisdiction[1] because his claims relate to the applicability of the Elementary and Secondary Education Act of 1965.

Bradford alleged that, because of an alleged financial exigency, the MPSB intended to close two of its elementary schools, Pine Grove and Henry Adams. Bradford asserted federal claims pursuant to 20 U.S.C. §§ 1701 and 1703 on the grounds that the children were not being provided equal educational opportunities without regard to race, color, sex, or national origin, and that transfer of children to other schools would result in increased segregation, cause greater travel times, and will not ensure a higher number of certified teachers. He also alleged that closure of the schools would result in a reduction in force of teachers and other MPSB employees.

Accordingly, Bradford requested a temporary restraining order ("TRO") prohibiting the closure of the schools, and an order requiring defendants to form a committee of community members to create a proposed plan that would be in the best interest of all the children in the Morehouse Parish School System.

On November 26, 2018, the District Court denied Bradford's motion for TRO, principally because he lacked standing to bring suit:

---

[1] 28 U.S.C. § 1331.

> [i]n his allegations, Bradford states only that he lives in Louisiana and receives mail at an address in Bastrop. Such allegations are insufficient to challenge the School Board's proposed actions. He does not allege that he has a child in the school system or any other basis for standing. Unless he can meet this showing, the Court must dismiss his action.

(Nov. 26, 2018, Mem. Order [doc. # 4]).

On December 6, 2018, the MPSB defendants filed the instant motion to dismiss the suit for lack of standing and for failure to state a claim upon which relief can be granted. On December 13, 2018, Bradford filed an amended complaint to allege that he is a grandfather of five children who attend Morehouse Parish Schools. (Pl. Amend. Compl.). He further asserted that he was a community clergyman, and that the closure of the two schools would have a significant effect on twenty or more of his "church members in the community." *Id*. He also alleged that on December 4, 2018, the MPSB voted to close the two schools. *Id*. Bradford joined the MPSB's attorney, Stephen Katz, as an additional defendant in the matter. *Id*.

On December 17, 2018, the State defendants filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. In so doing, they adopted the arguments set forth in the MPSB defendants' original motion to dismiss, and further argued that dismissal was warranted because the State defendants had no legal authority to redress the alleged harm posed by MPSB's decision to close the two schools.

On December 18, 2018, the MPSB defendants, plus Stephen Katz, filed the instant motion to dismiss plaintiff's *amended* complaint on the same grounds as their original motion, i.e., for lack of standing and for failure to state a claim upon which relief can be granted.

On January 7, 2019, Bradford filed his opposition to the motions to dismiss wherein he alleged that the closure of the two schools would place his grandchildren in an unsafe

environment because overcrowding could lead to a Hepatitis A epidemic and a violation of the Louisiana State Fire Marshal Code. [doc. # 15]. He further alleged that defendant, Chip Rawls, a/k/a Leland George Rawls, II, violated state law by failing to vacate his seat on the MPSB when he switched his residence outside of his elected district in February 2018. Therefore, he asserted that all votes Rawls participated in from February through December 2018 were null and void. Finally, he asserted that defendant, Stephen Katz, committed a criminal act because he knew that Chip Rawls no longer resided in the district, yet he continued to collect $10,000 in salary.[2]

On January 11, 2019, the MPSB defendants, plus Stephen Katz, filed a reply brief in support of their motions to dismiss. [doc. # 18]. Accordingly, the matter is ripe.

## **Analysis**

Before reaching the merits of a case, federal courts are obliged to ensure that they enjoy subject matter jurisdiction to hear the matter. *See Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430-431, 127 S.Ct. 1184, 1191 (2007); *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir. 1999) (courts must examine the basis for the exercise of federal subject matter jurisdiction). This practice ensures that a court without jurisdiction does

---

[2] Insofar as plaintiff's response to defendants' motion to dismiss represents an attempt to amend his complaint, the Fifth Circuit has held that the court should construe it as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a). *Riley v. Sch. Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010) (response to summary judgment motion) (citations omitted). When deciding whether to grant a party leave to amend, the court considers the following factors: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment. *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent any of these factors, leave should be granted. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted). Although the court will consider plaintiff's response as a proposed second amended complaint, the pleading still does not cure the grounds for dismissal urged by defendants. Therefore, the "motion" for leave to amend is futile, and is denied on that basis.

not end up "prematurely dismissing a case with prejudice."  *See In Re: Fema Trailer Formaldehyde Products Liability Litigation (Mississippi Plaintiffs), In Re: Fema Trailer Formaldehyde Products Liability Litigation (Alabama Plaintiffs)*, 668 F.3d 281 (5th Cir. 2012) (citation omitted).  Lack of subject matter jurisdiction may be raised at any time.  *Giles v. Nylcare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999).

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)).  The party seeking to invoke jurisdiction bears the burden of demonstrating its existence.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

Here, defendants seek dismissal of plaintiff's case for lack of standing.  Standing, for purposes of the federal courts, comes in two flavors:  "Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction."  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11–12, 124 S.Ct. 2301, 2308–09 (2004), abrogated in part by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S.Ct. 1377 (2014) (internal citations and quotation marks omitted).

a)      Article III Standing

The United States Constitution, via Article III, limits federal courts' jurisdiction to

"cases" and "controversies." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir.2005) (citing U.S. CONST. ART. III, § 2). The "law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, ___ U.S.___, 137 S.Ct. 1645, 1650–51 (2017) (citation omitted). Thus, "the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (citation and internal quotation marks omitted). The Article III standing requirements apply to claims for injunctive relief. *See Seals v. McBee*, 898 F.3d 587, 591 (5th Cir.2018).

Article III standing is comprised of three essential elements. *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016) (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*. (internal citations omitted). Further, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, ___ U.S. ___, 137 S.Ct. 1645, 1650–51 (2017) (citations omitted). When deciding a motion to dismiss for want of standing, the trial court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the plaintiff. *Warth, supra*.

For purposes of the injury-in-fact element, plaintiff must show that "he . . . suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or

6

imminent, not conjectural or hypothetical.'" *Spokeo, supra* (citation omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*.

In this case, plaintiff has not advanced any personal and individual injury stemming from the threatened closure of the two elementary schools. While he has grandchildren and church members who have children affected by the closures, he has not alleged that *he* will suffer any harm *personally*. *See Burgin v. Brown*, No. 15-201S, 2018 WL 1932598, at *6 (W.D. N.Y. Apr. 24, 2018) (Board's failure to adopt the program caused plaintiff no harm where he was not a student, parent of a student, or school employee).

Insofar as plaintiff relies on his status as a taxpayer to confer standing, the Supreme Court generally has denied federal and state taxpayers standing under Article III to object to particular expenditures of federal or state funds simply because they are taxpayers. *Ehm v. San Antonio City Council*, 269 Fed. Appx. 375, 377 (5th Cir.2008) (citation omitted). Municipal residents, however, *do* have standing to enjoin the illegal use of taxpayer funds by a municipal entity. *See Ehm, supra*. "A plaintiff meets the 'injury' requirement of municipal taxpayer standing if he shows that 'he pays taxes to the relevant entity' and 'tax revenues are expended on the disputed practice.'" *Id*. (citing *Doe v. Duncanville Independent School Dist.*, 70 F.3d 402, 408 (5th Cir.1995)).

Although Bradford alleged that he was a city, parish, and state taxpayer, he did not allege that he actually paid taxes to the MPSB. He also did not allege or establish that the MPSB expended local tax revenues on the proposed school closures. In any event, plaintiff's requested relief would not abate any unarticulated expenditure of funds associated with the school closures. Although plaintiff requested a TRO enjoining the school closures, the District Court denied that

relief. The only other relief sought by Bradford was an order requiring the formation of a committee to create a plan that would be in the best interest of the school children. Of course, the committee's "plan," ultimately could be the same as the school board's – closure of the schools. Therefore, the alleged unlawful conduct is not likely to be redressed by the requested relief.

Along these lines, state law provides that it is the responsibility of *each local public school board* to determine the number of schools to be opened, and the number of teachers and other school personnel to be employed. La. R.S. § 17:81(A)(2). Furthermore, unless the school has been deemed failing, BESE has "no control over the business affairs of a city, parish, or other local public school board or the selection or removal of its officers and employees . . ." La. Const. Ann. Art. VIII, § 3. In other words, the alleged injury suffered by plaintiff (the school closures) is not fairly traceable to the State defendants, nor is it likely to be redressed by a favorable judicial decision because they are not the proper parties to ameliorate the harm.[3]

b)  Prudential Standing

In addition to failing to establish Article III standing, plaintiff's suit is barred by

---

[3] In his response to defendants' motion to dismiss, plaintiff cited portions of Louisiana Revised Statute § 17:17.6, which tasks LDE and BESE with preparing a program to reduce childhood obesity. However, he did not explain how school closures would violate LDE and BESE's obligation to formulate a program, which, according to the statute, remained the responsibility of each public elementary school to adopt. La. R.S. § 17.6(A)(3). Of course, he also did not allege a personal harm from any violation of the childhood obesity program.

Plaintiff also cited Louisiana Revised Statute § 17:10.1, which requires BESE to provide for a statewide system of accountability for schools and school districts based on student achievement. Although BESE is required to notify any public school board on a regular basis when it is determined to be financially at risk, there is no indication that Morehouse Parish Schools reached the point to warrant the judicial appointment of a fiscal administrator. *See* La. R.S. § 17:10.1(D).

considerations of prudential standing, which encompasses at least three broad principles: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126, 134 S.Ct. 1377, 1386 (2014) (citations and internal quotation marks omitted). Here, plaintiff's complaint, as amended, transgresses at least two of these bars to suit.

First, to assert claims on behalf of a third party, plaintiff must satisfy three criteria: "[1] the litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; [2] the litigant must have a close relation to the third party; and [3] there must exist some hindrance to the third party's ability to protect his or her own interests." *Burgin, supra*. Bradford, at minimum, has not alleged facts to satisfy the first and third criteria.

Second, and relatedly, plaintiff invoked this court's jurisdiction by alleging violations of the Equal Educational Opportunities Act ("EEOA") 20 U.S.C. §§ 1701 and 1703. Although the EEOA provides a private right of action for individuals who have been denied an "equal educational opportunity,"[4] Bradford does not allege that *he* meets this requirement.[5] Similarly, insofar as plaintiff also endeavored to assert a right of action under Title I of the Elementary and

---

[4] *See* 20 U.S.C. § 1706; *see also Castaneda v. Pickard*, 648 F.2d 989, 999 (5th Cir.1981).

[5] Even if Bradford did enjoy a private right of action under the EEOA, he still would need to set forth facts to demonstrate that by closing the two elementary schools, MPSB *intended* to treat similarly situated persons differently on the basis of race or another protected characteristic. *Castaneda, supra*. He has not made that showing here.

9

Secondary Education Act of 1965, courts have recognized that there is no such private cause of action under that provision. *See Chester Upland Sch. Dist. v. Pennsylvania*, No. 12-132, 2012 WL 1344368, at *7 (E.D. Pa. Apr. 17, 2012); *Scott v. Conley*, No. 15-0371, 2016 WL 4257507, at *2 (D. Utah July 18, 2016), R&R adopted, 2016 WL 4257339 (D. Utah Aug. 11, 2016).

## Conclusion

In sum, where, as here, the plaintiff does not enjoy standing, individually, there is no case or controversy, and the suit must be dismissed. *Levin v. Minnesota Life Ins. Co.*, Civ. Action No. 07-1330, 2008 WL 2704772, at *6 (S.D. Tex. July 7, 2008) (citing *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir.1981)); *Levin v. Minnesota Life Ins. Co.*, Civ Action No. 07-1330, 2008 WL 2704772, at *6 (S.D. Tex. July 7, 2008); Fed.R.Civ.P. 12(b)(1).[6] Accordingly,

IT IS RECOMMENDED that defendants' motion to dismiss [doc. #s 6, 10, & 12] be GRANTED, and that plaintiff's complaint, as amended, be dismissed, without prejudice, as to all parties,[7] for lack of standing. Fed.R.Civ.P. 12(b)(1) and/or 12(b)(6).[8]

---

[6] Although the court is authorized to permit plaintiff an opportunity to amend his complaint to satisfy standing, Bradford already has done so (or endeavored to do) more than once in this case. At this juncture, the court is not confident that plaintiff possesses any additional information to support his claims, and therefore, further amendment would prove futile. Dismissal is required. *See Warth, supra* (if after opportunity to amend, the plaintiff's standing still does not appear from all materials of record, the complaint must be dismissed).

[7] Defendant, Colby Daniels, did not join the motion(s) to dismiss filed by the MPSB defendants. However, where, as here, a defending party establishes that a plaintiff has no cause of action, this defense should inure to similarly situated defendants. *See Lewis v. Lynn* 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (citations omitted).

[8] The recommended dismissal of this case is primarily for lack of constitutional standing, which is jurisdictional. However, because dismissal alternatively is warranted for lack of prudential standing, then dismissal is properly granted under Rule 12(b)(6). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2. (5th Cir.2011).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 28th day of January 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE